## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**CHARLENE FIELDER,**
**on behalf of T.T. Jr.**                                          **PLAINTIFF**

**V.**                                    **CIVIL ACTION NO.  3:13CV1075 HTW-LRA**

**CAROLYN W.  COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**                    **DEFENDANT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Charlene Fielder appeals the final decision denying the application for

Supplemental Security Income ("SSI") that she filed on behalf of her minor son, T.T. Jr.

The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final

decision of the Administrative Law Judge.  Having carefully considered the hearing

transcript, the medical records in evidence, and all the applicable law, the undersigned

recommends that the decision be affirmed.

### Facts and Procedural Background

On November 20, 2009, Plaintiff filed an application for SSI on behalf of her then

7-year-old son, T.T. Jr., alleging that he became disabled on November 1, 2009, due to

asthma, speech problems, and attention deficit hyperactivity disorder ("ADHD").  The

application was denied initially and on reconsideration.  Plaintiff appealed the denial, and

on November 14, 2011, Administrative Law Judge Nancy L. Brock  ("ALJ") rendered an

unfavorable decision, finding that Plaintiff had not established that her son was disabled

within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's

request for review.  She now appeals that decision.

## Childhood Disability Standard

In order for a child to be found disabled and entitled to SSI benefits, he or she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).  When evaluating a child's eligibility for disability benefits, an ALJ engages in a three-step sequential process, which considers:

(1)     whether the child is doing substantial gainful activity;

(2)     if not, whether the child has a medically determinable "severe" impairment or combination of impairments; and

(3)     if so, whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

*See* 20 C.F.R. § 416.924 (b)-(d).  If a child's impairment does not meet, medically equal, or functionally equal a listed impairment, the child will not be considered disabled. Functional equivalency is measured according to six domains of function: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1); *see also Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citing *Sullivan v. Zebley* 493 U.S. 521, 530-32 (1990)).  To be functionally equivalent to a listing, the impairment must result in either a "'marked'

limitation in two domains of functioning or an 'extreme' limitation in one domain . . . ."
20 C.F.R. § 416.926a(a).  A marked limitation interferes seriously with the child's ability
to "independently initiate, sustain, or complete activities," while an extreme limitation
"interferes very seriously with [the child's] ability to independently initiate, sustain, or
complete activities."  20 C.F.R. §§ 416.926a(e)(2)(i) & 416.926a(e)(3)(i).

Upon reviewing the evidence, the ALJ concluded that T.T. Jr. was not disabled
under the Social Security Act and was not entitled to childhood disability benefits
pursuant to 20 C.F.R. § 416.924(a).  At step one of the three-step sequential evaluation
process, the ALJ found that he had not engaged in substantial gainful activity since
November 20, 2009, the application date.  At steps two and three, the ALJ found that
while T.T. Jr.'s asthma; ADHD; inattentive type; and, speech delay were severe, the
medical evidence did not support listing-level severity.  With regard to the six functional
domains, the ALJ concluded that Plaintiff had no limitations in moving about and
manipulating objects and caring for himself, and less than marked limitations in every
other domain.

### Standard of Review

This Court's review of the ALJ's decision is limited to two basic inquiries: "(1)
whether there is substantial evidence in the record to support the [ALJ's] decision; and (2)
whether the decision comports with relevant legal standards."  *Brock v. Chater*, 84 F.3d
726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d. 243, 245 (5th Cir. 1991)).

*See also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Fifth Circuit defines

substantial evidence as "that which is relevant and sufficient for a reasonable mind to

accept as adequate to support a conclusion; it must be more than a scintilla, but it need not

be a preponderance."  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting

*Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)).  Any findings by the

Commissioner that are supported by substantial evidence are conclusive.  *Ripley v.*

*Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

### Discussion

Plaintiff alleges that the ALJ erred in failing to find that her son satisfied Listings

112.05(D) and 103.03(C)(2) for asthma and mental retardation.  *See* 20 C.F.R. Pt. 404,

Subpt. P, App. 1 §§ 112.05 (D) & 103.03(C)(2).  The undersigned rejects these arguments

for the reasons that follow.

To establish a mental retardation claim for disability benefits under Listing

112.05, claimants must demonstrate "significantly subaverage general intellectual

functioning ___**with**___ deficits in adaptative functioning."  20 C.F.R. Pt. 404, Subpt. P, App. 1 §

112.05 (emphasis added).  Section 112.05 (D) requires intelligence testing showing "a

valid verbal, performance, or full scale IQ of 60 though 70 and a physical or other mental

impairment imposing an additional and significant limitation of function."  *Id.*  If more

than one I.Q. score is obtained, the lowest score is considered.  Section 112.00 D (9).  If a

disability claimant's condition meets or equals the "listed" impairments, he or she is

4

conclusively presumed to be disabled.  A claimant has the burden of proving that his condition meets or equals a listing, and he must manifest all of the specified criteria of a particular listing to meet this burden.  *Zebley,* 493 U.S. 521 at 530.

In this case, Plaintiff asserts that the ALJ's decision should be reversed or alternatively remanded because she failed to consider whether the claimant's learning problems met the listing for mental retardation at step three of the sequential evaluation.  While an ALJ has a duty to analyze a claimant's impairments under every applicable Listing, an ALJ's failure to consider a specific Listing is harmless if the record shows the Listing is not met.  *See Audler v. Astrue*, 501 F.3d 446, 448-49 (5th Cir. 2007).  In this circuit, procedural errors at step three do not warrant reversal as long as the substantial rights of a party have not been affected.  *Id.* (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).  The claimant's substantial rights were not affected here.

As evidence that her son satisfies the listings for mental retardation, Plaintiff cites the I.Q. scores assessed by Consulting Examiner, Dr. Jan Boggs, indicating that he had a Verbal I.Q. score of 92, Performance IQ score of 65, and a Full Scale IQ score of 77.  She additionally cites the ALJ's finding that the claimant's asthma, speech delay, and ADHD were severe impairments.  As evidence of deficits in adaptive functioning, she cites his medical records from Weems Community Mental Health Center, the report submitted by his first grade teacher's assistant, Verneria Chapman, and the findings of consultative examiners, Drs. Jan Boggs and Charles Gammel.

As an initial matter, no examining or treating physician has ever diagnosed T.T. Jr. with mental retardation.  In the comprehensive evaluation conducted by Dr. Boggs in March 2010, he opined that the claimant was a slow worker, with low average intelligence and diagnosed him with "an ADHD, attention type, condition," not mental retardation.  On examination, he noted that the claimant had deficiencies in his perceptual motor skills, but was developing basic reading and math skills.  In his opinion, the claimant's ADHD affected the claimant's ability to stay on task resulting in lower grades and unfinished assignments.  It was unclear whether the claimant was still taking his medication as he had not taken it on the day of the appointment, but Dr. Boggs opined that the medication would likely help with the claimant's "glitches in concentration." Intelligence testing obtained during the examination also indicated that the claimant had a performance I.Q. score of 65.  Although Plaintiff correctly notes that this score falls within the listing range for mental retardation, a qualifying "score and an accompanying severe impairment alone are not sufficient to satisfy Listing 112.05(D)." *Richard ex rel Z.N.F.,* 480 F.App'x at 777.  The listing for mental retardation requires that deficits in adaptive functioning must also be proven. *Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009).  Substantial evidence supports the ALJ's findings that the requisite deficits were not present here.[1]

---

[1]ECF No. 9, pp. 182-185.

With regard to the claimant's ability to acquire and use information, the record reflects that he was retained in the first grade.  He has since graduated to the second grade and has never required special education classes except for speech therapy classes twice per week.  In March 2010, his first-grade teacher's assistant, Ms. Chapman, reported that plaintiff had no problems comprehending oral instructions, but had slight problems understanding vocabulary, participating in class discussions, and learning new material.  She also indicated that he had no serious problems in any area, but had obvious problems reading and comprehending written material and doing math problems; understanding and participating in class discussions; providing organized and adequate oral explanations and descriptions; recalling and applying previously learned material; and, applying problem-solving skills in class discussions.[2]

In weighing Ms. Chapman's opinion, the ALJ acknowledged that she had spent significant time with the claimant as his assistant teacher, but found Dr. Boggs's examination findings were entitled to more weight.  Relative to the claimant's ability to attend and complete tasks, for example, Ms. Chapman reported that the claimant had obvious problems focusing long enough to finish assigned activities or tasks; refocusing to task when necessary; completing class/homework assignments accurately without careless mistakes; and, working at a reasonable pace to finish on time.  Slight problems were also noted with regard to his ability to pay attention when spoken to directly; to

_____

[2]ECF No.  9, pp. 194-201.

sustain attention during play/sports activities; waiting to take turns; changing from one activity to another without being disruptive; and, working without distracting himself or others.  She also noted that the claimant had no problems with organization, but exhibited serious problems with carrying out single-step and multi-step instructions requiring extra assistance when necessary.  However, the evidence overall only supported less then marked limitations in this domain.  As noted by the ALJ, Dr. Boggs opined that the claimant's classroom difficulties were attributable to his ADHD, for which he was not currently taking his medication.  Although the evidence reflected the deficiency in perceptual motor skills as noted by Ms. Chapman, the claimant was developing basic reading and math skills and his difficulties appeared to be at least partially resolved with additional help.[3]

Relative to his ability to interact and relate to others, Plaintiff testified that T.T. Jr. threw tantrums, would not follow her instructions, and often misbehaved.  Her reports to this effect are documented in the claimant's treatment records from Weems Community Mental Health Center.  Contrary to Plaintiff's testimony, Ms. Chapman did not note any serious problems in this domain.  She noted that the claimant had obvious problems with relating experiences and telling stories, and with introducing and maintaining relevant and appropriate topics of conversation, but no more than slight problems in any other area.  In addition, Dr. Boggs observed that the claimant was a "pleasant child" with a "decent

_____

[3] ECF No.  9, pp. 194-201.

respect for authority." Further, in a speech/language evaluation conducted in March 2010, Dr. Charles Gammel reported that Plaintiff was compliant with testing and his "conversational language skills appeared age appropriate." He also noted that while the claimant's articulation was moderately delayed, his conversational skills were adequate for everyday communication, and his overall communication skills were within the normal range.[4]

Finally, nothing of record established that the claimant had significant limitations in his health and well-being, or deficits in his ability to care for himself or in moving about or manipulating objects. While the objective evidence established that he had ADHD and asthma, the ALJ accurately noted that "the claimant's mother testified that she did not know of any negative side effects from the claimant's medications and the medical record does not support a continuing and constant need of medical care due to any impairment." The evidence shows the claimant received only conservative and sporadic medical treatment for his physical ailments. Additionally, Plaintiff testified that the claimant has breathing difficulty when he plays too hard at school, but she never reported these difficulties to a medical professional, and Ms. Chapman found no problems in this domain. She also observed that the claimant had no problems in his ability to attend to his personal hygiene and needs. Thus, Plaintiff's assertions that the claimant had difficulty caring for himself were only credible to the extent that they were consistent

---

[4]ECF No. 9, pp. 179-180,183-186, 194-201.

with the remainder of the record.[5]

In light of the foregoing, while there may be conflicting evidence regarding the claimant's functional limitations in the six domains, it is not the role of this Court to re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ. Substantial evidence supports the ALJ's finding that the claimant had no limitations in moving about and manipulating objects and caring for himself, and less than marked limitations in every other domain. Accordingly, the claimant did not have the requisite deficits in adaptive functioning to meet Listing 112.05(D) for mental retardation; the ALJ's failure to consider this listing was harmless.

As her next point of error, Plaintiff alleges that the ALJ also failed to properly evaluate whether her son's asthma satisfies Listing 103.03. It is undisputed that T.T. Jr. was diagnosed with asthma, but a diagnosis alone is insufficient to establish presumptive disability. For asthma to be presumptively disabling, Listing 103.03 requires that asthma be accompanied by one of the requirements enumerated in subsections (A)-(D) of the listing. In this case, the ALJ specifically considered Listing 103.03 (C)(2), which requires the evidence to show in relevant part:

> C.    Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:
>
>        . . . .

---

[5]ECF No. 9, pp. 25, 194-201.

> 2.    Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12 month period;

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 103.03(C)(2).

Here, Plaintiff maintains that her son's prescription records establish that he was prescribed the corticosteroids, Asmanex and Advair Diskus, at a rate that would satisfy the usage requirements of 103.03(C)(2), and that this usage, coupled with her testimony that he experiences frequent wheezing *and* attacks is sufficient to satisfy Listing criteria. Specifically, Plaintiff testified that her son takes Advair and uses a breathing machine every day, but despite these treatments, he has asthma attacks, wheezes "all the time," and has difficulty breathing during the night.[6]

Even if the Court were to accept Plaintiff's claim that her son's corticosteroid usage was sufficient to satisfy Listing criteria, the objective evidence did not clearly establish the frequency and severity of attacks as alleged by Plaintiff. When a claimant's statements concerning the intensity, persistence or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make a finding on their credibility. *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008). The Plaintiff's allegations were only partially credible for the reasons that follow.

Only 15 pages of the records in this case reflect medical treatment for physical ailments. Those records, which cover a two-year period, reveal that since the alleged

---

[6]ECF No. 9, pp. 33-51.

onset date, the claimant was treated on a handful of occasions for various ailments, including sneezing, coughing, fever, runny nose, sore throat, nausea, headaches, and burning with urination.  In his last medical visit of record in August 2011, the claimant had normal breath sounds, no wheezes, no rhonchi, normal chest expansion, and no rales on examination.  He also denied coughing, asthma, wheezing, or shortness of breath, and was diagnosed with allergic rhinitis.  In a previous visit in April 2011, the claimant's mother told the examining physician that he had been out of his asthma medication for one to two weeks and had trouble breathing at night.  The claimant's chief complaints were coughing, sneezing, and trouble breathing; he was diagnosed with bronchitis.  The examining physician noted that while Advair would be beneficial at the time, the claimant needed to follow up to assess the continued need for asthma maintenance medication as there had been no acute attack in the last few years.  Indeed, medical records reflect that the claimant was last treated for an asthma attack in 2008, which incidentally, was the last time he was prescribed Advair.[7]

Additionally, although Plaintiff cites the claimant's prescription records as evidence of his corticosteroid usage, she has never refuted evidence that the claimant was not compliant with his medication or out of medication on more than one occasion.  In fact, Ms. Chapman reported that she did not know whether the claimant took his medication on a regular basis, but noted that he did not frequently miss school due to

---

[7]ECF No. 9, pp.  237-252.

illness.  As the ALJ observed:  "One would assume if the claimant's breathing problems were as serious as alleged [Plaintiff] would have taken him to the emergency room or at least reported it to his treating physician."[8]  Yet, the only documented report of breathing difficulty was made in April 2011 when the claimant was diagnosed with bronchitis.  Significantly, Plaintiff did not report that her son had been experiencing wheezing and attacks with the frequency and severity she described in her hearing testimony.  Absent evidence corroborating her testimony, the ALJ reasonably concluded that the requirements of 103.03 (C)(2) were not met.

In sum, the undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.  For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of

---

[8]ECF No. 9, p. 19.

the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 8th day of July 2014.

/s/  Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE